IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VISION BANK,<br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>LOUIS J. LANZA, III and<br>C.J. MINOR, a/k/a Calvin J. Minor,<br>    Defendants/Counterclaim-Plaintiffs. | )<br>)<br>)<br>)   CIVIL ACTION NO. 10-00628-KD-M<br>)<br>)<br>)<br>) |

**ORDER**

This matter is before the Court on Plaintiff/Counterclaim-Defendant Vision Bank's Motion for Partial Summary Judgment and brief and evidentiary material in support (Docs. 30 and 30-1 to 30-3), Defendants/Counterclaim-Plaintiffs' Response thereto and evidentiary material in support (Docs. 37-1 and 37-2 to 37-4), and Vision Bank's Reply (Doc. 38). Upon consideration, and for the reasons set forth herein, Vision Bank's motion for partial summary judgment is due to be **GRANTED**.

**I.    Procedural History**

On November 12, 2010, Plaintiff/Counterclaim-Defendant Vision Bank commenced this action by filing a complaint against Defendants/Counterclaim-Plaintiffs Louis J. Lanza, III ("Lanza") and C.J. Minor ("Minor") (collectively, "Defendants") alleging causes of action for breach of contract (Count One) and accounting and inspection (Count Two). (Doc. 1). Lanza answered the complaint on December 20, 2010 (Doc. 6), and Minor answered on March 11, 2011 (Doc. 19). On April 5, 2011, Defendants asserted counterclaims against Vision Bank for breach of fiduciary duty (Count One) and fraud (Count Two). (Doc. 23). Vision Bank filed its Motion for Partial Summary Judgment on Count One of its complaint and on both of Defendants' counterclaim on August 19, 2011. (Doc. 30). Defendants' response (Doc. 37-1) and Vision Bank's reply (Doc.

1

38) have been timely filed, and the motion is now ripe for consideration.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) governs procedures and provides as follows:

> **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Vision Bank, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986)). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).

### III.    Factual Background

On November 29, 2008, Plaintiff/Counterclaim-Defendant Vision Bank loaned $1,114,615.22 to Defendants/Counterclaim-Plaintiffs Lanza and Minor. (Doc. 1-1 at 2). The November 2008 loan was secured by mortgages to a property on Ono Island in Baldwin County, Alabama (the "Ono Island property") that had previously secured other loans Vision Bank made to Lanza and Minor. (Id.; Doc. 23-1; Doc. 23-2). In connection with the November 2008 loan, Lanza and Minor executed a Multipurpose Note and Security Agreement (the "Note") and agreed to make scheduled payments to Vision Bank until the Note was paid off. (Doc. 1-1 at 2). Lanza and Minor subsequently defaulted on their obligations, and Vision Bank demanded payment in full. (Doc. 30-2 at 2, ¶ 4). On November 12, 2010, after Lanza and Minor failed to pay, Vision Bank brought the instant suit seeking 1) a judgment holding the Defendants jointly and severally liable for all sums owed under the Note (plus attorneys' fees and court costs); 2) an accounting of all loan proceeds; and 3) an inspection of Defendants' books and records, financial statements, tax returns, and other financial information. (Doc. 1 at 2-3, ¶¶ 6-10).

A month after commencing this action, Vision Bank foreclosed on the Ono Island property. (Doc. 23 at 1-2, ¶¶ 3-4; Doc. 30-2 at 2, ¶ 5). Vision Bank claims, and Defendants do not dispute,

that the foreclosure proceeds of $555,000 were insufficient to satisfy Defendants' debt. On March 25, 2011 Vision Bank sold the Ono Island property to SE Property Holdings, LLC for $595,000 and gave Defendants credit for the $40,000 difference in sale price. (Doc. 30-2 at 2, ¶ 5). On June 7, 2011, the property was resold for $650,000, and Defendants received an additional credit of $13,651.43 for a total credit of $53,651.43 against the balance due under the Note at that time. (Id.).

As of August 18, 2011, the date upon which Vision Bank made its motion for partial summary judgment, the balance owed under the Note was $570,041.45, consisting of $502,151.67 of principal, $59,689.82 in accrued interest, and $8,199.96 for other charges/fees. (Id.). Interest continues to accrue at the rate of $97.64 per diem. (Id.).

**IV.   Analysis**

    A.   Governing Law

Before addressing the parties' substantive contentions, the Court must first decide which state's law governs the claims and counterclaims in this diversity action between a Florida corporation and two Louisiana residents. "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Alabama courts follow the traditional conflict-of-law principles of lex loci contractus and lex loci delicti. Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So. 3d 200, 213 (Ala. 2009). Accordingly, in Alabama, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement, Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991), and the substantive rights of tort claimants are determined according to the laws of the state where their alleged injuries occurred. Fitts v. Minn. Mining & Mfg. Co., 581 So. 2d 819 (Ala.

4

1991). In this case, the Note expressly declares that it "shall be governed by the laws of the State of Alabama," (Doc. 1-1 at 3, ¶ 13), so the Court will apply Alabama law to Vision Bank's contract-based claim. The Court will also apply Alabama law to Defendants' tort-based counterclaims, because Defendants' alleged injuries resulted from the sale of property "in front of the Baldwin County Courthouse door in Bay Minette, Alabama." (Doc. 37-2 at 1).

   B. Vision Bank's Breach of Contract Claim

Under Alabama law, the essential elements of a cause of action for breach of contract are the existence of a valid contract binding the parties; plaintiff's performance under the contract; defendant's nonperformance; and damages. See, e.g., Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1195 (Ala. 2003). Defendants challenge none of these four elements, and the Court finds that the record establishes Vision Bank's entitlement to summary judgment. Specifically, the Court finds that the Note was a valid contract, that Vision Bank performed under the contract by loaning funds to Defendants, that Defendants breached the contract by failing to make scheduled payments under the Note, and that Vision Bank sustained damages as a result of Defendants' breach. Accordingly, Vision Bank's motion for partial summary judgment will be **GRANTED** as to Count One of its complaint.

   C. Defendants' Fiduciary Duty and Fraud Counterclaims

Both of Defendants' counterclaims seek to set aside Vision Bank's foreclosure of the Ono Island property. (Doc. 23 at 1-3, ¶¶ 2-12). Specifically, Defendants allege that Vision Bank sold the property at a price so low and unreasonable that it violated Vision Bank's fiduciary duty to Defendants and raises a presumption of fraud. (Id.). The Court disagrees.

As a preliminary matter, it does not appear that Vision Bank owed any fiduciary duties to Defendants. Under Alabama law, the relationship of a lender to a borrower generally does not

impose a fiduciary duty on the lender. K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So. 2d 671, 675 (Ala. 1992) ("Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank."). This general rule also applies to the relationship between a mortgagee and mortgagor. See, e.g., Brabham v. Am. Nat'l Bank of Union Springs, 689 So. 2d 82 (Ala. Civ. App. 1996). However, "when a mortgagee forecloses a mortgage pursuant to a power, the mortgagee becomes a trustee of the debtor/mortgagor, and is bound to act in good faith and adopt all reasonable modes of proceeding in order to render the sale most beneficial to the mortgagor." Wood River Dev., Inc. v. Armbrester, 547 So. 2d 844, 847 (Ala. 1989). A foreclosing mortgagee owes that duty because "the mortgagee is selling the property, and his interest is diametrically opposed to the interest of the mortgagor, especially if he is the purchaser of the property at the foreclosure sale." Id. But the duty to act in good faith is not a general fiduciary duty. Brabham, 689 So. 2d at 88. Whereas Vision Bank cannot be liable for breaching a duty that it did not have, Defendants' first counterclaim must be dismissed.

However, even if the Court were to liberally construe Defendants' first counterclaim as alleging a cause of action for either wrongful foreclosure or breach of a mortgagee's duty of good faith, dismissal would still be warranted. As both parties acknowledge, a foreclosure will not be set aside on account of mere inadequacy in the price bid unless that price is so "grossly inadequate" as to shock the conscience of the court. See Hayden v. Smith, 113 So. 293, 295 (Ala. 1927).

Though "each case must be judged by its own circumstances" to determine whether a bid is grossly inadequate, id., a number of state and federal cases provide guidance. For example, in Mt. Carmel Estates, Inc. v. Regions Bank, 853 So. 2d 160 (Ala. 2002), the Alabama Supreme Court held that a mortgagee's bid at a foreclosure sale was not grossly inadequate where the bid was equal to 81% of the value assigned to the property by a post-foreclosure appraisal that contemplated a long-

term development and subdivision marketing plan. Id. at 171.  More recently, the Court of Appeals for Eleventh Circuit affirmed the judgment of a trial judge who concluded that a foreclosure sale price equal to 20%, 30% or 66% of a property's fair market value was not so inadequate as to shock the judicial conscience.  CS Assets, LLC v. W. Beach, LLC, 370 F. App'x 45, 46 (11th Cir. 2010) (per curiam).  Here, Vision Bank's bid of $555,000 was equal to 72% of what Defendants claim to be the Ono Island property's fair market value as of December 10, 2010.[1]  (Doc. 23 at 2, ¶ 6). Assuming without deciding that Defendants' valuation is fair, a reasonable factfinder could not find that the foreclosure price in this case was shockingly inadequate.  Accordingly, Defendants' claim that Vision Bank's foreclosure of the Ono Island property was wrongful and breached the duty that Vision Bank owed to Defendants is not supported by sufficient evidence.[2]  Summary judgment will be **GRANTED** to Vision Bank on Count One of Defendant's counterclaims.

The Court's finding that, as a matter of law, Vision Bank's foreclosure bid was not grossly inadequate is also fatal to Defendants' counterclaim for fraud, which rests on the allegation that Vision Bank's bid was "so low as to raise a presumption of fraudulent conduct." (Doc. 23 at 3,

---

[1]  Relying on an appraisal report drafted by Donald S. Holyfield of The Holyfield Company, Defendants claim that the Ono Island property was worth $770,000 as of the date of the foreclosure sale. (Doc. 37-3 at 3).  The appraiser's certification indicates that his appraisal was prepared after the foreclosure and at the request of Defendants' attorneys weeks before Defendants asserted their counterclaims.  (Id. at 14).  Given these facts, it is not clear that Mr. Holyfield's appraisal is admissible evidence that may be properly considered on summary judgment, see Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999); Fed. R. Civ. P. 56(c)(4), but the Court need not reach that issue — which the parties have not addressed — given its finding that Vision Bank's bid of $550,000 would not be grossly inadequate even if the Ono Island property was worth what Defendants and Mr. Holyfield claim it was worth.

[2]  In their brief, Defendants also argue that they did not receive sufficient credit for the two post-foreclosure sales of the Ono Island property.  (Doc. 37-1 at 3-5).  However, Defendants' counterclaims are silent as to the post-foreclosure sales and seek relief on the sole ground that the *foreclosure price* was inadequate. (Doc. 23 at 2, ¶ 8; id. at 3, ¶ 11).  Because Defendants' arguments as to the sufficiency of the credit do not bear on Defendants' counterclaims, they are disregarded as irrelevant.

7

¶ 11). Furthermore, Defendants have neither pled nor proven the essential elements of actual fraud. See Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196, 1210 (Ala. 2008) ("The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." (citation and quotation marks omitted)).  Vision Bank is therefore entitled to summary judgment on Count Two of Defendants' counterclaims.

V. **Conclusion**

Accordingly, it is **ORDERED** that Vision Bank's Motion for Partial Summary Judgment (Doc. 30) is **GRANTED**.[3]

**DONE** and **ORDERED** this the **1st** day of **November 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[3] A final determination of Count Two of Vision Bank's complaint (asserting a cause of action for accounting and inspection) remains pending, as no party has moved for judgment on or dismissal of that claim.  Accordingly, the Court declines Vision Bank's invitation to enter final judgment at this time pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  See Doc. 30-1 at 7.